Filed 2/6/24  P. v. Bradberry CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RICHARD DAVID BRADBERRY,<br><br>Defendant and Appellant. | F084562<br><br>(Super. Ct. No. F19904859)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan B. Conklin, Judge.

Stephen M. Lathrop, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary, and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Richard David Bradberry was convicted of eight sex offenses based on his molestation of four boys. Defendant contends: (1) there is insufficient evidence to support a finding that the victim was 14 or 15 years old at the time he committed a lewd act upon a child age 14 or 15 (count 8) and the trial court erred in denying defendant's motion for dismissal of that count; (2) the trial court's failure to pronounce the sentence on count 4, which the parties agree should have been stayed pursuant to Penal Code section 654,[1] and striking of the sentence on that count constitutes an unauthorized sentence; and (3) the minute order must be corrected to state defendant is to have "no visitation" with the victims, instead of "no contact" with the victims.

The People respond that the victim's statements to law enforcement and evidence at the time of his disclosures provided sufficient evidence that the victim was 14 or 15 at the time the offense in count 8 was committed. The People also respond that the minute order and abstract of judgment correctly state the sentence on count 4 was stayed not stricken and remand on this count would serve no purpose. Lastly, the People concede the minute order may be amended to reflect that defendant is to have no visitation rather than no contact with the victims.

Because the trial court failed to pronounce sentence on count 4 and the abstract of judgment does not include the term on that count, we will remand for the court to pronounce sentence on count 4 and issue an amended abstract of judgment. On remand, the court must also determine which victims are subject to the no-visitation order and modify the minute order and abstract of judgment pursuant to its determination. In all other respects, we affirm.

## PROCEDURAL SUMMARY

On March 21, 2022, the Fresno County District Attorney filed an amended information charging defendant with: two counts of committing a lewd act upon a child

---

[1] All further statutory references are to the Penal Code.

2.

under 14 years old (§ 288, subd. (a); counts 1–2); oral copulation on a child under 16 years old (§ 287, subd. (b)(2); count 3); oral copulation or sexual penetration with a child 10 years of age or younger (§ 288.7, subd. (b); count 5); and four counts of committing a lewd act upon a child 14 or 15 years old by a person at least 10 years older (§ 288, subd. (c)(1); counts 4, 6–8).  The information alleged that the victim was under 14 years of age and there was more than one victim on counts 1 and 2 (§ 667.61, subd. (j)(2)).  The information further alleged the following aggravating circumstances on all counts: the victims were particularly vulnerable (Cal. Rules of Court,[2] rule 4.421(a)(3)), defendant induced a minor to commit or assist in the crime (rule 4.421(a)(5)), defendant took advantage of a position of trust (rule 4.421(a)(11)), and defendant has engaged in violent conduct (rule 4.421(b)(1)).[3]

On May 31, 2022, the jury found defendant guilty on all counts and found true the enhancement alleged on counts 1 and 2.  In a bifurcated bench trial, the court found true the aggravating circumstances under rule 4.421(a)(3), (5), and (11), but found not true the allegation that defendant engaged in violent conduct under rule 4.421(b)(1).

On June 28, 2022, the trial court sentenced defendant to four years determinate followed by 65 years to life.  Defendant's determinate term was imposed as follows:  two years for count 3 and eight months each for counts 6, 7, and 8, to be served consecutively.  Defendant's indeterminate term was imposed as follows:  count 1, 25 years to life; count 2, 25 years to life consecutive to the term on count 1; and an "independent consecutive term" of 15 years to life on count 5.  The court did not pronounce the term on count 4 and stated the sentence on count 4 was "stricken" pursuant

---

[2] All further rule references are to the California Rules of Court.

[3] Defendant waived his right to a jury trial on the aggravating circumstances and requested a bench trial instead.

to section 654.  The court ordered defendant to have "no visitation" with any of the victims.

Defendant filed a timely notice of appeal.

## FACTUAL SUMMARY

I.   **Prosecution Evidence**

A.   *Molestation of N. (Counts 6 Through 8)*

N., born in December 2000, met defendant in 2014 when N. was 14 years old.[4] He and defendant lived in the same apartment complex in Clovis.  N. moved into the apartment with his mother, K., and his maternal grandmother in August 2014.  N. and defendant would say "hi" to each other when N. went to the store near the apartment complex or to the mailbox.  They began talking when defendant initiated a conversation with N. at one point.

Defendant and N. became friends in early 2015 about four or five months after they started talking.  N. would talk to defendant about music, hunting and fishing at N.'s apartment or in front of or on defendant's porch.  Defendant sometimes took N. to school or picked him up from school in defendant's truck.  Defendant also took N. to stores and fishing.  Defendant taught N. how to drive in his truck.

In about mid-2015, N. started playing video games at defendant's apartment.  One of the games N. would play depicted a strip club that showed topless women.

K. met defendant when N. was around 14 years old, "roughly around a year" after the family moved into the apartment complex, but before August 2015.  N. and defendant were already friends before K. met defendant.  K. gave N. permission to go on fishing trips with defendant.

---

[4] Defendant was born on April 10, 1964.

### 1. The First Incident

With K.'s permission, defendant took N. on a trip to Santa Cruz in the summer of 2015. They stayed for one night in a hotel just off the beach. Defendant and N. shared one hotel room and slept in separate beds. That night, defendant stripped down to his underwear to go to bed and told N. he did so to stay cool.

The next day, defendant drove them back to Clovis in his truck. Defendant was wearing shorts and about 20 minutes into the ride, defendant scratched his groin area and exposed his penis. Defendant left his penis exposed for the rest of the three- to four-hour ride back to the apartment complex. N. saw defendant's penis three or four times during the ride but did not say anything because he was afraid of defendant. This incident was not charged.

After that, N. saw defendant's penis several times in defendant's apartment or his own apartment. Defendant's penis was erect most of the time N. saw it.

### 2. The Second Incident

About six to eight months after the Santa Cruz trip, N. was sleeping in pajamas on the couch in his apartment. N. heard his grandmother leave for work and then fell back asleep. N. woke up and defendant was in his house cleaning up. N. woke up again and felt a hand creeping up his leg. N. kicked the hand away but woke up to the same motion again three more times. The first two times the hand was over N.'s clothes moving up to his inner thigh. The third time, N. felt the hand start at his ankle, go up his pant leg and started to touch his inner thigh. N. kicked when defendant's hand reached his inner thigh and defendant immediately pulled his hand away. N. asked defendant about it later and defendant told N. he was looking for the remote control under N., but N. knew the remote was not on the couch. Count 7 was charged for this incident.

### 3. The Third Incident

In the summer of 2016, defendant and N. were talking in defendant's apartment. N. and defendant had been working out together occasionally. N. pointed out how much

muscle gain he was building. Defendant told N. he was looking good, and defendant wanted to see his progress. N. showed his arms to defendant and defendant felt N.'s arms. Defendant told N. he wished he had N.'s stomach and wanted to see N.'s stomach. N. started to reveal his abdominal area when defendant pushed N. up against the wall, lifted N.'s shirt and started to feel N.'s stomach up to his chest. Defendant felt N.'s stomach for about 30 seconds. Defendant told N. his stomach was nice, and defendant wished he had a stomach like N. Count 6 was charged for this incident.

### 4. *The Fourth Incident*

A couple weeks after the stomach incident, defendant and N. were walking from defendant's apartment to defendant's truck when defendant grabbed and squeezed N.'s buttocks and called him "dear." N. jolted his hips forward when defendant touched his buttocks. After the two got into the truck, defendant tried to grab N.'s thigh. This incident was not charged.

### 5. *The Fifth Incident*

Sometime after the Santa Cruz trip, N. was sleeping on the couch in his apartment while his grandmother was in the bathroom putting on makeup. Defendant moved his hand up N.'s leg toward the thigh while looking over his shoulder every 10 to 15 seconds. Defendant had his hand over N.'s clothes for the first couple touches, but the third time defendant tried to put his hand under N.'s pant leg. N. quickly kicked defendant off because he "was aware of what was going on at this point." N.'s grandmother came into the living room and N. fell back asleep. After N.'s grandmother left for work, defendant continued to try to touch N. and N. kept waking up and kicking him off. N. then woke up to defendant's hand touching his penis and testicles with skin-to-skin contact. This "really woke up" N. who kicked and defendant quickly pulled his hand away. Defendant acted like he was cleaning and everything was normal. N. did not confront defendant. Count 8 was charged for this incident.

### 6. N.'s Disclosures

N. later told his grandmother about some of the incidents with defendant before she moved out of their apartment. N.'s grandmother kept it confidential because at first N. did not want to tell the rest of the family. N.'s grandmother became very watchful of defendant and would make him sit in separate parts of the apartment. N. told K. a couple weeks after telling his grandmother. K. told the rest of the family. After N. told K., she only wanted N. around defendant under her supervision. K. told N. not to answer the door or hang out with defendant.

### B.    Molestation of I., A., and R. (Counts 1 Through 5)[5]

I., born in April 2008, was friends with N. and A., born in June 2005. I. and R., born in May 2008, lived in the same group home. A. lived with his mother near the apartment complex where N. and defendant lived.

I. and A. would play video games at defendant's apartment. A video game they played depicted a strip club that showed women wearing only a bra and underwear or naked. Defendant would laugh and ask I. and A. "do you guys want to get all touchy" when they went to the strip club in the video game.

One time, I. and R. were watching A. play a video game at defendant's apartment. A. took his character to the strip club in the game and made his character throw money at the women. This made the characters dance "all crazy." Defendant asked the boys if they "want to do what the characters are doing." The boys declined. About 20 minutes later, defendant said to the boys "let's get touchy." A. pulled his pants down and defendant rubbed A.'s penis with his hands for about a minute.

A couple months after that incident, I. and A. were at defendant's apartment again. Defendant tried to take off A.'s and I.'s pants, but the boys did not let him.

---

[5] We provide limited facts regarding the counts for these victims because they are not relevant to the issues defendant raised on appeal.

A month later, I. and A. were at defendant's apartment again. Defendant simultaneously rubbed A.'s penis and I.'s penis over the boys' clothing for a minute or two. This incident was charged as count 2.

A few weeks later, defendant invited I. and A. to his apartment when the boys were walking by. I. and A. went inside defendant's apartment. After the boys drank some water in defendant's kitchen, they went to the couch in the living room. Defendant took A.'s pants off and rubbed A.'s penis. Defendant put his mouth on A.'s penis. Defendant also touched I.'s penis above I.'s clothes. Defendant put his mouth on I.'s penis for about a minute. Defendant took off his own clothes. Defendant asked A. if he wanted to touch defendant's penis and A. said "sure." A. put his hands on defendant's penis. I. left defendant's apartment because he was uncomfortable. This incident was charged as counts 3 and 4 for A., and as count 5 for I.

R. recalled going to defendant's apartment three times. When R. was 10 or 11 years old, he and I. ran away from the group home and went to defendant's apartment. R. smoked cigarettes at defendant's apartment but nothing else happened the first time R. went there.

A few days to a week after the first visit, R. went to defendant's apartment with I. again. A. was at the apartment when R. and I. arrived. The three boys watched a pornographic video defendant played on his laptop. A. and defendant were masturbating to the video using a vibrator. R. saw defendant sucking on A.'s penis for about a minute after A. used the vibrator.

R. went from the group home to defendant's apartment alone the third time on July 8, 2019. R. was on defendant's couch looking at defendant's knives. R. told defendant that he had a rash on his "butt" that was itchy. Defendant went to the bathroom and brought back an ointment. R. told defendant he did not want defendant to put the ointment on him, but defendant put ointment on R.'s buttocks and under his penis. Defendant touched R.'s penis with his hand. Count 1 was charged for this event.

8.

C.      *Law Enforcement Investigation*

On July 8, 2019, R. disclosed defendant's conduct to the group home where he and I. lived.  The group home contacted the Clovis Police Department to report defendant.  Clovis Police detectives E. Roehlk and M. Maciel went to the group home that day to speak with R. and I. about what had occurred at defendant's apartment.

A nurse examined R. on July 8, 2019.  R. had redness on his inner thighs and scrotum.  The nurse obtained a buccal swab and swabs from R.'s anus, scrotum, and penis.  Department of Justice senior criminalist J. Hale testified that defendant's DNA was detected on R.'s swabs.

On July 10, 2019, the Clovis Police Department searched defendant's apartment pursuant to a search warrant and seized defendant's laptop and a back massager.  The unallocated space (deleted images) of defendant's laptop contained 58 images of "straight" pornography, 238 images of gay pornography and 174 images of teen/preteen boys.

Defendant was arrested and the police publicized the arrest.  N. called the police in response to the news broadcast about the arrest.  Clovis Police detective K. Herrick interviewed N. on July 18, 2019, in N.'s apartment.  N. told Herrick about the incidents with defendant and said he was 15 years old when all these incidents occurred.

## II.   Defense Evidence

Defendant denied ever showing pornography on his laptop to any of the boys.  Defendant also denied ever touching N.'s groin area or stomach.  He denied showing his penis to N.  Defendant said the object referred to as a vibrator is a back massager that defendant used for neuropathy in his feet.  He let I., A., and R. use the massager but denied telling the boys to use the massager on their genitals.  Defendant also denied ever seeing I., A. or R. masturbating in his apartment.  Defendant denied ever putting his mouth on A.'s penis.  Defendant applied baby powder and anti-itch cream to R.'s inner thigh.  Defendant put the cream on R.'s thigh and then R. rubbed it around.

9.

N. was recalled to further testify for the defense. N. said he is better at remembering how old he was when events happened than the event's year. After having his recollection refreshed with his preliminary hearing testimony, N. testified he was 16 when the wall incident occurred. N. also testified that he was 16 at the time of the two incidents on the couch in his apartment. Regarding the couch incident when N.'s grandmother was not in the apartment, N. said he was "15, 16" and was "still struggling with that one." N. confirmed on cross-examination that he told Herrick he was 15 years old when all the incidents occurred. N. agreed he said the Santa Cruz incident was in summer 2016 during his preliminary hearing testimony. N. recalled testifying that the incident when his grandmother was in the bathroom was "a few months after Santa Cruz." (Boldface omitted.)

Dr. Ruth Ballard testified as an expert in DNA analysis for the defense. Ballard discussed the difference between direct and indirect transfers of DNA. Direct transfer occurs when a person touches an object and leaves their DNA on that object. Indirect transfer "is everything else," and can occur when a person picks up another's DNA from touching an object previously touched by the other person. Ballard reviewed Hale's report and testimony, and largely agreed with Hale's results and testimony. Ballard testified that defendant's DNA from R.'s swabs could have been transferred either directly or indirectly, and she could not definitively say whether it was direct or indirect.

## DISCUSSION

### I. Sufficiency of the Evidence

Defendant contends the evidence at the close of the prosecution's case-in-chief was insufficient on the fifth incident with N. (count 8) and the trial court erred in denying defendant's motion for dismissal after the prosecution rested. Defendant further argues there is insufficient evidence to support the conviction on this count at the close of all the evidence. Defendant claims the evidence shows N. was 16 at the time of the fifth incident, not 14 or 15 years old as required to violate section 288, subdivision (c)(1).

## A.     *Section 1118.1 Motion for Acquittal*

After the prosecution rested, defendant made a section 1118.1[6] motion to dismiss the counts related to N.  Defendant argued that in some of N.'s testimony he said he was 16 at the time of the alleged events.  The trial court denied defendant's motion.  The court recognized there were "different statements" about N.'s age at the time of the alleged events, but also acknowledged there were statements from the preliminary hearing and Herrick's interview from which the jury could conclude that N. was under 16 years old at the time of the offenses.  The court concluded the issue of N.'s age was a credibility determination for the jury to make.[7]

## B.     *Applicable Law and Analysis*

In assessing a sufficiency of the evidence claim, we "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)  " 'We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  [Citation.]  [¶]  The same standard of review applies to cases in which

---

[6] Section 1118.1 provides that in a jury trial, the "court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal."

[7] After both sides rested, defendant made another section 1118.1 motion. Defendant argued that based on the way N. testified during the defense's case, "there's no way that this case has been proven beyond a reasonable doubt as to his age."  The trial court again denied the motion and concluded the issue was a credibility determination to be made by the jury.  The court recognized that if the jury believes N.'s prior statements, he was 15, but if the jury believes N.'s testimony he was "16 to a degree."  The court acknowledged "there are varying interpretations of the evidence," but concluded there was credible evidence from which the jury could find the necessary elements beyond a reasonable doubt.

the prosecution relies primarily on circumstantial evidence . . . . "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility.' " (*People v. Houston* (2012) 54 Cal.4th 1186, 1215.) Thus, the reviewing "court must accord due deference to the trier of fact and not substitute its evaluation of a witness's credibility for that of the fact-finder." (*People v. Barnes* (1986) 42 Cal.3d 284, 303–304.) A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

"The test applied by the trial court in ruling on a motion for acquittal is the same test applied by the appellate court in reviewing a conviction for sufficiency of the evidence, namely, to determine whether from the evidence then in the record, including reasonable inferences to be drawn therefrom, there is substantial evidence of the existence of every element of the offense charged." (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 89; accord, *People v. Stevens* (2007) 41 Cal.4th 182, 200.) The question in deciding a defendant's section 1118.1 motion is therefore the same as for a sufficiency of the evidence challenge: "whether there is ' " 'substantial evidence of the existence of each element of the offense charged' " ' such that any rational jury may have convicted defendant." (*People v. Veamatahau* (2020) 9 Cal.5th 16, 36.) "In ruling on [a section] 1118.1 motion for judgment of acquittal, the court evaluates the evidence in the light most favorable to the prosecution. If there is any substantial evidence, including all inferences reasonably drawn from the evidence, to support the elements of the offense, the court must deny the [section 1118.1] motion." (*Porter v. Superior Court* (2009) 47 Cal.4th 125, 132.) Review of a trial court's denial of a motion for acquittal is based on the evidence at the time the motion was made and is de novo. (*People v. Cole* (2004) 33 Cal.4th 1158, 1213.)

For the sole count at issue, count 8, defendant was charged with violating section 288, subdivision (c)(1) "[o]n or about June 1, 2016 through November 30, 2016" when N. was "14 or 15 years old." This charge related to the fifth incident when defendant touched N.'s leg, inner thigh, and genitalia in N.'s apartment while N.'s grandmother was in the other room. To prove this charge, the prosecution was required to show the following elements: (1) defendant willfully and lewdly committed any lewd or lascivious act upon or with the body of the victim; (2) the victim was 14 or 15 years old; (3) defendant was at least 10 years older than the victim; and (4) defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of defendant or the victim. (§ 288, subds. (a), (c)(1).)[8] Because N. was born in December 2000, the prosecution was required to show this incident occurred before N. turned 16 in December 2016.

Defendant only contests whether N. was 14 or 15 years old at the time of the fifth incident. We reject defendant's contentions because, at the close of the prosecution's case-in-chief, there was sufficient evidence from which a reasonable trier of fact could find N. was still 15 at the time of the fifth incident.

Herrick testified that during N.'s interview, N. said he was 15 when all the incidents with defendant occurred. While N. testified at trial that he was 16 when the fifth incident occurred, N. also confirmed that the Santa Cruz incident took place in the summer of 2015 and the fifth incident "happened summer a year later," at which time N. would have still been 15. N. conceded he has "memory problems" and it is "hard for

---

[8] The jury was correctly instructed on these elements pursuant to CALCRIM No. 1112: "To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant willfully touched any part of a child's body either on the bare skin or through the clothing; [¶] 2. The defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of (himself) or the child; [¶] 3. The child was 14 or 15 years old at the time of the act; [¶] AND [¶] 4. When the defendant acted, the child was at least 10 years younger than the defendant."

13.

[him] to remember certain things." N. also admitted it is confusing for him to remember years and dates. A rational juror could have inferred that N.'s prior statements about his age at the time of the fifth incident were more reliable than his later trial testimony due in part to N.'s self-professed memory problems.

N. disclosed some of the incidents with defendant to his grandmother, including the fifth incident, before she moved out. N. initially testified that his grandmother moved out around 2016 or 2017. He also said he was 15 or 16 when his grandmother moved out. N. later testified that he "believed" his grandmother moved out before he turned 16 in December 2016. K. testified that her mother moved out in January or February of 2017 but admitted she is "terrible with dates." A rational juror could have inferred that N.'s grandmother moved out prior to or shortly after N. turned 16 and thus, the fifth incident occurred when N. was still 15 based on the evidence this incident happened in the summer and N.'s disclosure of the incident to his grandmother before she moved out.

Defendant argues the evidence during the prosecution's case-in-chief shows the Santa Cruz trip occurred in the summer of 2016 when N. was 15 and thus, the fifth incident must have occurred after N. was 16 because N. testified it "happened summer a year later." Specifically, defendant contends that "since the record shows that [K.] first met [defendant] in August 2015" and the Santa Cruz trip occurred with K.'s permission, the record demonstrates "the Santa Cruz trip occurred in May or June of 2016— approximately six months before [N.]'s 16th birthday." Contrary to defendant's assertions, the evidence does not show that K. first met defendant in August 2015:

> "[PROSECUTOR:] Okay. And so in August of 2014 you moved into [the apartment complex], correct?
>
> "[K.:] Yes.
>
> "[PROSECUTOR:] And then how long after that did you meet [defendant]?
>
> "[K.:] It was roughly around a year.

14.

"[PROSECUTOR:] So would you say that it was before August of 2015 that you met him?

"[K.:] Yes." (Boldface omitted.)

Defendant's argument the trip must have occurred in the summer of 2016 is consequently unsupported by the record. Furthermore, to the extent defendant relies on inferences that could be drawn in his favor, that is inconsistent with the trial court's role in deciding a section 1118.1 motion. (*Porter v. Superior Court*, *supra*, 47 Cal.4th at p. 132.)

Viewing the evidence in the light most favorable to the prosecution, the trial court correctly concluded determination of N.'s age was a credibility determination to be made by the jury and there was sufficient evidence from which a reasonable trier of fact could find N. was under 16 at the time of the offenses. Therefore, the trial court properly denied defendant's section 1118.1 motion.

We similarly reject defendant's related argument that the verdict on count 8 is not supported by substantial evidence following the close of all evidence. During the defense's case, N. testified that he was 16 at the time of the fifth incident, but N. also confirmed he previously said the fifth incident was only a few months after the Santa Cruz trip during his preliminary hearing testimony. During the prosecutor's cross-examination, N. again confirmed he told Herrick he was 15 at the time of this incident.

The jury thus heard inconsistent statements throughout the trial regarding N.'s age at the time of relevant events. The jury "has wide latitude to believe or disbelieve witnesses, or even specific portions of their testimony" and may " ' "combine the accepted portions with bits of testimony or inferences from the testimony of other witnesses thus weaving a cloth of truth out of selected available material." ' " (*In re Lopez* (2023) 14 Cal.5th 562, 591.) It is the jury's exclusive province as the trier of fact to resolve conflicts and inconsistencies in the testimony. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) By its verdict the jury necessarily found beyond a reasonable doubt that N. was under 16 at the time of all offenses related to him. (See, e.g., *People v.*

15.

*Crabtree* (2009) 169 Cal.App.4th 1293, 1323–1324 [the jury as the trier of fact was entitled to resolve the victim's conflicting testimony regarding whether she was 16 at the time of the defendant's sexual abuse].)  Simply because the evidence was conflicting does not mean it was insufficient to support that finding.  (*People v. Jennings* (2010) 50 Cal.4th 616, 639 ["reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding"].)

Defendant argues N.'s "brief comment" during his trial testimony for the prosecution that the Santa Cruz trip occurred in 2015 is not substantial evidence because it is belied by N.'s testimony and prior statements the trip occurred when he was 15, i.e., in the summer of 2016.  Because the fifth incident reportedly "happened summer a year later" following the Santa Cruz trip, defendant claims the fifth incident must have occurred when N. was 16.  As previously discussed, it is the jury's exclusive province "to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends." (*People v. Jones* (1990) 51 Cal.3d 294, 314.)  We therefore "do not question the credibility of a witness's testimony, so long as it is 'not inherently improbable.' " (*People v. Navarro* (2021) 12 Cal.5th 285, 302.)

Defendant essentially argues N.'s testimony the Santa Cruz trip occurred in 2015 is inherently improbable because K.'s timeline of events related to defendant "demonstrates that Santa Cruz trip occurred during the summer of 2016 when [N.] was 15."  "The inherently improbable standard addresses the basic content of the testimony itself—i.e., could that have happened?—rather than the apparent credibility of the person testifying.  Hence, the requirement that the improbability must be 'inherent,' and the falsity apparent 'without resorting to inferences or deductions.'  [Citation.]  In other words, the challenged evidence must be improbable ' "on its face" ' [citation], and thus we do not compare it to other evidence (except, perhaps, certain universally accepted and judicially noticeable facts)." (*People v. Ennis* (2010) 190 Cal.App.4th 721, 729.)  N.'s testimony the Santa Cruz trip was in 2015 is not " ' " 'unbelievable per se,' " physically

impossible or " 'wholly unacceptable to reasonable minds.' " ' " (*Ibid*.) Defendant's challenge to N.'s testimony "is based entirely on comparisons, contradictions and inferences, [and] amounts to nothing more than an attack on witness credibility, [which] cannot be the basis for a reversal of the judgment on appeal." (*Id.* at p. 725.) Although N. gave conflicting statements about his age when certain events occurred, his testimony about the Santa Cruz trip was not inherently improbable such that we may reject it. Defendant's arguments are no more than an invitation to reweigh the evidence and substitute our view of the record for the jury's view. This we cannot do. (*People v. Brown* (2014) 59 Cal.4th 86, 106.)

## II. Sentencing Error

Defendant contends the trial court failed to impose sentence on count 4 and then improperly struck the sentence on that count resulting in an unauthorized sentence. Defendant argues the court was required to impose sentence on count 4 but stay its execution pursuant to section 654. The People agree that sentences subject to section 654 are stayed, not stricken, but argue remand would serve no purpose because the minute order and abstract of judgment correctly state the sentence on count 4 was stayed.

The probation officer's report recommended a consecutive sentence of eight months (one-third of the middle term) on count 4. At sentencing, the trial court discussed this count with the parties in relevant part:

> "[THE COURT:] Additionally, Count 4, the PC 288(c)(1) alleging the victim of [A.] is 654. [¶] I believe all parties agree to that as well?
>
> "[PROSECUTOR]: Yes, Your Honor.
>
> "THE COURT: Probation did not. Probation had it running consecutive, but I believe it's 654.
>
> "[PROSECUTOR]: That's the People's position and we did argue as such in the closing argument. [¶] . . . [¶]

17.

"[DEFENSE COUNSEL:] My understanding as to the determinate counts is in light of the fact that Count 3 and Count 4 are 654, that the maximum is five years.

"THE COURT: I'm sorry. You said Count 3 and Count 4. Did you mean just Count 4 at 654?

"[DEFENSE COUNSEL]: Correct. Sorry. Count 4 is 654 of Count 3."

Subsequently, when pronouncing sentence, the court stated: "Count 4 pursuant to 654 that sentence is stricken." The court did not otherwise specify the term on count 4. The minute order states the sentence on count 4 as "8 Months. 1/3rd the Middle Term" and further states, "Sentencing Stayed Pursuant to PC 654." (Boldface omitted.) The abstract of judgment indicates count 4 was stayed pursuant to section 654 but does not state the term for this count.

"Section 654 precludes multiple punishments for a single act or indivisible course of conduct." (*People v. Hester* (2000) 22 Cal.4th 290, 294; see § 654.) "[R]ather than dismissing charges or imposing concurrent sentences, when a court determines that a conviction falls within the meaning of section 654, it is necessary to *impose* sentence but to stay the *execution* of the duplicative sentence." (*People v. Duff* (2010) 50 Cal.4th 787, 796; see *People v. Alford* (2010) 180 Cal.App.4th 1463, 1466.) "[A] court acts in excess of its jurisdiction and imposes an unauthorized sentence when it fails to stay execution of a sentence under section 654." (*Hester*, *supra*, at p. 295; see *People v. Scott* (1994) 9 Cal.4th 331, 354, fn. 17.) Defendant's challenge to the sentence on count 4 is thus cognizable on appeal despite the lack of objection at sentencing because the trial court's failure to correctly apply section 654 resulted in an unauthorized sentence. (*Hester*, *supra*, at p. 295.)

Because the trial court determined section 654 applied to count 4, the court was obligated to impose sentence but stay execution of the sentence on that count. While the abstract of judgment and minute order both reflect the sentence on count 4 was stayed,

18.

the court orally pronounced the sentence was "stricken." The record suggests the court intended to stay the sentence on count 4 and the court simply erroneously stated the sentence was stricken. However, the court did not actually pronounce the term to be imposed on this count. Additionally, while the minute order gives a term of eight months on count 4, the sentence recommended by probation, neither party notes the abstract of judgment only shows this count was stayed but does not state the term on this count.

"In a criminal case, judgment is rendered when the trial court orally pronounces sentence." (*People v. Karaman* (1992) 4 Cal.4th 335, 344, fn. 9.) "After conviction of a felony and where probation is denied, the court must pronounce judgment upon the defendant by imposing a fine or a sentence of imprisonment. [Citations.] Judgment must be pronounced orally in the presence of the defendant, and it must reflect the court's determination of the matter before it. [Citation.] The pronouncement of judgment is a judicial act [citation], and is to be distinguished from the ministerial act of entering the judgment as pronounced in the minutes or records of the court." (*People v. Hartsell* (1973) 34 Cal.App.3d 8, 13, disapproved on another ground in *Karaman*, *supra*, at pp. 345–346, fn. 11; see *Hoffman v. Superior Court* (1981) 122 Cal.App.3d 715, 723–724; §§ 12, 1202, 1445.) Recording unpronounced terms in the minutes or in the abstract of judgment cannot substitute for actually imposing a sentence on all counts. (*People v. Zackery* (2007) 147 Cal.App.4th 380, 387–388.)

"The failure to pronounce sentence on a count is an unauthorized sentence and subject to correction on remand." (*People v. Price* (1986) 184 Cal.App.3d 1405, 1411, fn. 6.) Accordingly, this matter must be remanded for the trial court to orally pronounce sentence on count 4 and issue an amended abstract of judgment identifying the term on that count. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 (*Mitchell*) [it is important to correct errors and omissions in the abstract of judgment].)

## III. No-visitation Order

Defendant contends, and the People agree, that the minute order must be corrected

to state defendant is to have "no visitation" with the victims, instead of "no contact" with the victims.

The probation officer recommended the following as part of defendant's sentence: "In compliance with Penal Code Section 1202.05, the defendant is to have no visitation with the victim." At sentencing, the trial court stated, "the defendant is to have no visitation with any of the named victims." The minute order however states: "Defendant is to have no *contact* with victims." (Italics added.) The abstract of judgment does not reference an order regarding the victims.

"Section 1202.05 requires a sentencing court to prohibit visitation between a defendant and his 'child victim' if the defendant is convicted of an offense involving sexual abuse of a child 'and the victim . . . is a child under the age of 18 years.' " (*People v. Scott* (2012) 203 Cal.App.4th 1303, 1312 (*Scott*).)[9] Similar to the circumstances here, the trial court in *Scott* orally pronounced an order " 'prohibiting visitation' " by the defendant with both of his victims, but the abstract of judgment and minute order stated the defendant was to have no contact with his victims. (*Scott*, at p. 1309.) The Court of Appeal concluded the minute order and abstract of judgment "cannot properly be characterized as orders of the court" because the court's oral pronouncement of sentence constitutes the judgment. (*Id.* at p. 1324.) The *Scott* court recognized that "[t]o the extent a minute order diverges from the sentencing proceedings it purports to memorialize, it is presumed to be the product of clerical error." (*Ibid*.) The court

---

[9] Section 1202.05, subdivision (a) provides in relevant part: "Whenever a person is sentenced to the state prison on or after January 1, 1993, for violating [multiple sections including sections 287 and 288] and the victim of one or more of those offenses is a child under the age of 18 years, the court shall prohibit all visitation between the defendant and the child victim. The court's order shall be transmitted to the Department of Corrections [and Rehabilitation], to the parents, adoptive parents, or guardians, or a combination thereof, of the child victim, and to the child victim. If any parent, adoptive parent, or legal guardian of the child victim, or the child victim objects to the court's order, he or she may request a hearing on the matter."

accordingly concluded the clerk's reference to no contact in the minute order and abstract of judgment was a clerical error subject to correction by the court.  (*Ibid.*)

"Any discrepancy between the judgment as orally pronounced and as recorded in the clerk's minutes or abstract of judgment is presumed to be the result of clerical error." (*People v. Leon* (2020) 8 Cal.5th 831, 855.)  Here, like in *Scott*, the trial court ordered defendant to have no visitation with the child victims, but the minute order states defendant is to have "no contact" with the victims.  The reference to "no contact" in the minute order is thus presumed to be a clerical error.[10]

While an appellate court may correct clerical errors at any time (*Mitchell*, *supra*, 26 Cal.4th at p. 185), neither party to this appeal recognized the trial court's oral pronouncement of the no-visitation order suffered from a judicial error.  "Generally, a clerical error is one inadvertently made, while a judicial error is one made advertently in the exercise of judgment or discretion."  (*People v. Jack* (1989) 213 Cal.App.3d 913, 915; see *In re Candelario* (1970) 3 Cal.3d 702, 705.)  The court ordered no visitation with "any" of defendant's named victims.  But section 1202.05 does not apply to victims who are adults at the time of sentencing.  (*Scott*, *supra*, 203 Cal.App.4th at p. 1323 ["the restrictions on visitation imposed by [§ 1202.05] apply only to victims who are under the age of 18 at the time of the contemplated visitation"].)  Defendant was sentenced in 2022, at which time one of his victims, N., was more than 18 years old.  Section 1202.05 did not apply to N. and the court's order prohibiting visitation with N. was unauthorized.

Upon remand to pronounce sentence on count 4, the trial court shall also determine which victims must be included in a no-visitation order pursuant to section

---

[10] A no-contact protective order for victims may be issued in certain circumstances.  (See, e.g., *Scott*, *supra*, 203 Cal.App.4th at pp. 1324–1325 [no-contact orders may be imposed under certain circumstances but not pursuant to § 1202.05]; see also § 136.2.)  Neither party argues the trial court intended to issue a no-contact order and the record shows the court intended to issue a no-visitation order pursuant to section 1202.05.

1202.05.  The court shall issue a modified no-visitation order pursuant to that determination and further amend the abstract of judgment to include the no-visitation order as modified.

## DISPOSITION

The trial court is ordered to pronounce sentence on count 4 and issue an amended abstract of judgment that includes the sentence imposed on that count.  The court is further ordered to determine the applicability of section 1202.05 to the victims and modify the no-visitation order as appropriate.  The court is directed to forward a copy of the amended abstract of judgment and modified order to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

DETJEN, Acting P. J.

WE CONCUR:


PEÑA, J.


SMITH, J.

22.